UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GORDIE DANIELS,

    Plaintiff,

v.    Case No. 8:18-cv-3088-T-24 JSS

HSN, INC., ET AL.

    Defendants.

_____/

**ORDER**

This cause comes before the Court on Defendants' Motion for Summary Judgment. (Doc. No. 40). Plaintiff opposes the motion.[1] (Doc. No. 49). As explained below, the motion is granted in part and denied in part.

**I. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own

---

[1] Defendants also filed a motion for leave to file a reply brief (Doc. No. 50), which Plaintiff opposes (Doc. No. 52). The Court finds that a reply brief is not necessary and denies the motion.

affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

**II. Background**

Plaintiff Gordie Daniels filed this lawsuit against his former employers, Defendants HSN, Inc., HSNi, LLC, and Qurate Retail, Inc. d/b/a Qurate Retail Group. Defendants, also known as the Home Shopping Network ("HSN") and QVC, sell retail products through their television networks and other commercial channels.

Plaintiff began his employment with Defendants in June of 2016 as a Casting Specialist. Later, Plaintiff became the Supervisor of On-Air Development. Both positions were non-exempt under the FLSA. In March of 2018, Plaintiff was promoted to an exempt, salaried manager position. At all times, Plaintiff reported to Tim Bruno. Plaintiff contends that Defendants violated the Fair Labor Standards Act ("FLSA") by not paying him overtime for all of the hours that he worked in excess of forty per week.

Defendants terminated Plaintiff on May 23, 2018 after Plaintiff sent a mass email on May 17, 2018 that was not well-received by some of the recipients and was characterized as "condescending." The email was leaked to "Page Six," which wrote a story about the incident and named Plaintiff as the sender of the email. Included in the story was HSN, Inc.'s May 22, 2018 response to the incident, in which a representative of HSN, Inc. stated that the email "was not authorized, reviewed or approved for distribution." (Doc. No. 40-50). Plaintiff contends that Bruno had instructed him to send the email, and as such, HSN, Inc.'s statement is false and defamatory.

As a result of the above, Plaintiff filed a two-count complaint asserting a defamation claim and an FLSA claim. Defendants now move for summary judgment on both claims.

### III. Motion for Summary Judgment

In the instant motion, Defendants argue that the Court should grant summary judgment on both the FLSA and defamation claims. As explained below, the Court finds that summary judgment should be granted on the defamation claim and that genuine issues of material fact preclude summary judgment on the FLSA claim.

#### A. FLSA Overtime Claim

Plaintiff contends that Defendants violated the FLSA by not paying him overtime for all of the hours that he worked in excess of forty per week. In order to prevail on his FLSA claim, Plaintiff "must prove that [he was] suffered or permitted to work without compensation." See Allen v. Bd. of Public Educ. for Bibb County, 495 F.3d 1306, 1314 (11th Cir. 2007)(citation omitted). "Courts have interpreted this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the [defendant] knew or should have known of the overtime work." Id. 1314-15 (citations omitted). As explained by one court:

> It is not relevant that the employer did not ask the employee to do the work. The reason that the employee performed the work is also not relevant. "[I]f the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted."

Id. at 1314 (citations omitted).

Defendants contend that this claim fails as a matter of law, because there is no evidence that Defendants knew or should have known that Plaintiff was working overtime without compensation. Instead, Defendants argue that there can be no FLSA violation, because Plaintiff deliberately prevented Defendants from obtaining such knowledge, because he failed to report the overtime hours for which he is now seeking compensation. However, as explained below, the Court concludes that the evidence before the Court shows that there is a genuine issue of

material fact regarding whether Defendants knew or should have known that Plaintiff was working overtime without compensation.

Bruno allowed Plaintiff to work a flexible schedule and to sometimes work from home. Plaintiff contends that his regular hours were between 8:00 a.m. and 5:00 p.m. When Plaintiff worked at the office, his time was kept through a badge-swiping system connected to a Kronos timekeeping system that recorded his hours. (Doc. No. 40-2, depo. p. 40, 57). When Plaintiff worked at home during his regular 8 to 5 workday, or when he travelled for work, he reported his hours to Bruno's assistant, Denise Miller, via email, and she recorded his hours in the Kronos system. (Doc. No. 40-2, depo. p. 48, 51-52, 57, 60).

Plaintiff contends that he had more work than he could complete within a 40-hour workweek, and as a result, he worked nights and weekends from home. (Doc. No. 40-2, depo. p. 72-73, 76). For this additional time, he did not report such hours to Miller, because Bruno told Plaintiff not to work more than 40 hours per week. (Doc. No. 40-2, depo. p. 48-52, 61-62). Yet Bruno still expected Plaintiff to complete all of his work that could not be completed within the 40-hour workweek. (Doc. No. 40-2, depo. p. 50, 60-62, 78).

Plaintiff contends that he regularly complained to Bruno that he was working from home and not getting paid. (Doc. No. 40-2, depo. p. 79). Plaintiff contends that he also told Normand Carter from Human Resources that he was working additional hours and not getting paid for them. (Doc. No. 40-2, depo. p. 99-103, 105-06). This evidence creates a genuine issue of material fact as to whether Defendants knew or should have known that Plaintiff was working overtime without compensation.

Defendants point out that Plaintiff did, in fact, report 250 hours of overtime over the course of his employment and was paid for those hours. Plaintiff does not dispute that

contention. (Doc. No. 40-2, depo. p. 47-48). However, Plaintiff contends that those overtime hours were for special situations, like a big brand launch or a casting. (Doc. No. 40-2, depo. p. 50-51). Furthermore, Plaintiff contends that Bruno told him that he was working too much overtime, to watch his hours, and to make sure that he stayed under 40 hours per week. (Doc. No. 40-2, depo. p. 48-49). Thus, Plaintiff argues that since Bruno's "actions squelched truthful reports of overtime worked, . . . [Defendants] cannot disclaim knowledge." Allen, 495 F.3d at 1319 (citation omitted).

The Court agrees with Plaintiff that whether Defendants knew or should have known that he was working overtime without compensation is a question for the jury to decide. Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's FLSA claim.

### B. Defamation Claim

Plaintiff has also asserted a claim of defamation *per se* against HSN, Inc. relating to a statement that it made to a "Page Six" writer, Oliver Coleman. Coleman emailed HSN asking if HSN wanted to comment on a story that he was writing and stated the following:

> We're looking into a story regarding the HSN/QVC merger. We're told that there has been substantial discord caused by an email sent by Gordie Daniels to representatives of companies who appear on HSN. In the email, Daniels laid out a "new direction" with "Dos" and Don't" [sic] for appearing on the network. A number of people who received the email responded badly to it, and . . . one said it was "condescending."

(Doc. No. 40-50). In response, HSN stated that "[t]he email you referenced . . . was not authorized, reviewed or approved for distribution." (Doc. No. 40-50). Page Six ran the story with HSN's comment. The story was heavily circulated online, and there was additional coverage by other online media outlets.

Plaintiff argues that HSN's statement is false and defamatory *per se*, because it characterizes him as a rogue employee that sent out an unapproved, condescending email to companies that appear on HSN. Plaintiff contends that he and Bruno had discussed the content of the email and that Bruno had told him to send it out. (Doc. No. 40-2, depo. p 159-63, 173-78, 186-88, 191-92, 201-02, 212).

HSN moves for summary judgment on this claim on several grounds. Accordingly, the Court will analyze this claim.

### 1. Defamation *Per Se*

HSN argues that Plaintiff's defamation claim fails, because he asserts a claim for defamation *per se*, as opposed to a claim for defamation *per quod*. The difference between defamation *per se* and *per quod* has been explained as follows:

> Under Florida law, to assert a claim for defamation—libel or slander—a plaintiff must establish that: "(1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury to another." Libel (written defamation) may be proven in two ways: *per se* or *per quod.* Libel *per quod* requires the statement to be put in context so as "to demonstrate [its] defamatory meaning or that the plaintiff is the subject of the statement." To allege a claim for libel *per se*, however, the plaintiff need not show any special damages because per se defamatory statements are "so obviously defamatory and damaging to [one's] reputation that they give rise to an absolute presumption both of malice and damage." . . .
>
> A written publication . . . rises to the level of libel *per se* "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." In a libel *per se* action, consideration is given only to the "four corners" of the publication. The statement should not be interpreted in the extreme, but as the "'common mind' would normally understand it."

Aflalo v. Weiner, 2018 WL 3235529, at *1–2 (S.D. Fla. July 2, 2018) (internal citations and footnote omitted).

Thus, when a defendant's statement is *per se* defamatory, the plaintiff need not prove that he was damaged by the statement because it is presumed that the statement caused him damage. See Alan v. Wells Fargo Bank, N.A., 604 Fed. Appx. 863, 865 (11th Cir. 2015); Risk Insurance and Reinsurance Solutions v. R + V Versicherung, 2007 WL 9700868, at *7 (S.D. Fla. June 6, 2007)(stating that "[w]hen words on their face, and without the aid of extrinsic proof, are injurious, they are said to be defamatory *per se* and no proof of damages is necessary to establish liability). Conversely, a plaintiff must prove special damages when asserting a claim for defamation *per quod.* See Risk Insurance (stating that "slander *per quod* involves words not harmful on their face, and therefore requires proof that they caused special damages"). As explained by one court:

> [D]efamation *per quod* requires explanation of context. In *per quod* actions, the words used, given their natural and common meaning, are not inherently injurious, but rather are injurious only as a consequence of extrinsic facts, such as innuendo. Therefore, in *per quod* actions, the plaintiff must assert actual economic damage.

Paulson v. Cosmetic Dermatology, Inc., 2017 WL 2484197, at *2 (S.D. Fla. June 8, 2017)(citation omitted).

HSN argues that the alleged defamatory statement is not *per se* defamatory, and therefore, the claim fails. The Court agrees that the statement is not *per se* defamatory. HSN's statement—that the email that Plaintiff sent "was not authorized, reviewed or approved for distribution"—is not so obviously defamatory and damaging to Plaintiff's reputation that a presumption of damage should arise. HSN's statement, without context, simply conveys that Plaintiff sent an email that HSN did not authorize, review, or approve. In a *per se* action,

7

consideration is only given to the four corners of the publication when determining whether the statement is so obviously defamatory that the court can take judicial notice of the damage to the plaintiff that *necessarily* flows from its injurious nature. See Aflalo, 2018 WL 3235529 at *3. Looking only at the email exchange between HSN and Coleman, HSN's statement is not *per se* defamatory, as it does not obviously tend to subject Plaintiff to hatred, distrust, ridicule, contempt, or disgrace, nor does it obviously tend to injure Plaintiff in his trade or profession. Thus, it is not so clear that Plaintiff would be damaged by HSN's statement that damages should be presumed.

Instead, to evaluate the alleged defamatory nature of HSN's statement, one would necessarily need to know more about the mass email that Plaintiff sent in order to have context for HSN's statement. For example, a potential employer would likely want to know more about the email that Plaintiff sent before determining whether Plaintiff sending it without review, approval, or authorization tends to show that Plaintiff would not be a good employee (*i.e.,* that HSN's statement tends to injure Plaintiff in his trade or profession). Likewise, HSN's statement does not tend to subject Plaintiff to hatred, distrust, ridicule, contempt, or disgrace without knowing the content of the email. Sending an email without permission, standing alone, is not detrimental to a person's personal or business reputation. The content and tone of the email, and whether it is attributable to Plaintiff or HSN, is what may subject Plaintiff to hatred, distrust, ridicule, contempt, or disgrace, or tend to injure Plaintiff in his trade or profession. Thus, without context, HSN's statement—that the email that Plaintiff sent was not authorized, reviewed or approved for distribution—cannot be deemed defamatory *per se*. Accordingly, the Court grants HSN summary judgment on Plaintiff's claim of defamation *per se*.

## 2. Defamation *Per Quod*

Plaintiff argues that even if HSN's statement is not *per se* defamatory, he should be allowed to pursue his claim *per quod* and be permitted to prove the damages caused by HSN's statement. The Court agrees with Plaintiff that he should be permitted to proceed on his defamation claim *per quod* if he can show that he has actually suffered damages due to HSN's statement. See Hood v. Connors, 419 So. 2d 742, 743 n.4 (Fla. 5th DCA 1982)(stating that even if the court had found that the statement was not slander *per se,* and instead was slander *per quod*, the claim would not be dismissed because the plaintiff had alleged actual damages). However, as explained below, the Court finds that Plaintiff has not pointed to any evidence of special damages, and as such, a claim for defamation *per quod* fails.[2]

As previously stated, when pursuing a claim for defamation *per se*, general damages are presumed, but when pursuing a claim for defamation *per quod*, the plaintiff must prove special damages. The difference in these two types of damages can be explained as follows:

> As a general matter, Florida law recognizes two categories of compensatory damages for defamation—general and special. "General damages are those which the law presumes must naturally, proximately and necessarily result from publication of the libel or slander. They are allowable whenever the immediate result is to impair the plaintiff's reputation, although no actual pecuniary loss is demonstrated." When the defamatory statements are per se, general damages are presumed. By contrast, "[t]he chief characteristic of special damages is a realized or liquidated loss."

---

[2] The Court notes that HSN also argues that its statement was true, and as such, Plaintiff cannot prevail on his defamation claim. Accepting Plaintiff's version of the facts as true, Plaintiff and Bruno discussed the content of the email and Bruno told Plaintiff to send the email out. (Doc. No. 40-2, depo. p 159-63, 173-78, 186-88, 191-92, 201-02, 212). However, it is undisputed that Bruno was not given a copy of the email to review before Plaintiff sent it out. (Doc. No. 40-2, depo. p. 187-88, 201-02). The Court need not reach this argument, because the Court has found that Plaintiff has failed to point to any evidence of special damages, which is fatal to his claim.

9

Blythe v. Fifth Third Bank, 2010 WL 11432601, at *6 (M.D. Fla. Jan. 19, 2010)(internal citations omitted).

HSN contends that Plaintiff cannot pursue a claim for defamation *per quod*, because he has no evidence of special damages. Plaintiff contends that he can show that he suffered special damages in two ways—lost employment opportunities and the cost to repair his online reputation.

First, Plaintiff contends that there is evidence that he lost employment opportunities as a result of HSN's statement. In support, Plaintiff cites to a text exchange discussing an employment opportunity, and the person that Plaintiff is texting ("Dom") asks if Plaintiff is the person described in the Page Six article. (Doc. No. 49-14, p. 4). Plaintiff responded that he is and explained the incident, to which Dom responded, "Not a deal breaker, just curious." (Doc. No. 49-14, p. 5). This text exchange is not evidence that Plaintiff lost an employment opportunity. Plaintiff also cites a 663-page exhibit (Doc. No. 49-27; Doc. NO. 49-28; Doc. No. 49-29) with no pin point cites or explanation as to how the exhibit shows that he lost employment opportunities as a result of HSN's statement.

It is not the Court's duty to search the record to find evidence to support Plaintiff's claims. See Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208, 1213 n.5 (11th Cir. 1995)(stating "We do not require trial courts to search the record and construct every argument that could have been made based upon the proffered materials"). This Court's cursory review of the exhibit shows that it is correspondence between Plaintiff and companies from which he was seeking employment.[3] The Court cannot find, and Plaintiff does not point to, anywhere in the record where a potential employer rejects Plaintiff's application and cites to HSN's statement (or

---

[3] Many of the pages appear to be duplicative.

the mass email that Plaintiff had sent out that precipitated HSN's statement) as a reason for their decision. In fact, Plaintiff does not point to evidence showing that any of these potential employers knew about HSN's statement (or the Page Six article it was contained in).[4] This is fatal to Plaintiff's contention that he can show special damages through lost employment opportunities.

In Simon v. Shearson Lehman Brothers, Inc., 895 F.2d 1304 (11th Cir. 1990), the court addressed the issue of special damages in connection with the plaintiff's slander claim. Specifically, the plaintiff alleged that as a result of a slanderous statement, he was terminated. See id. at 1313. The court framed the issue as whether the plaintiff "proved that the statement caused special damages; that is, whether the statement was a legal cause of [the plaintiff's] termination." Id. (footnote omitted). The court found that the plaintiff did not prove special damages, stating:[5]

> [W]e find it significant that there is no testimony from [the decision-maker] that connects the slanderous statement to [the plaintiff's] termination. . . . [The plaintiff] bears the burden of proving by a preponderance of the evidence that the slander caused his termination. The nature of special damages are "such as really took place. They are not to be implied but are to be specifically proved." . . . In this case, we agree with the district court that "[the decision-maker], whose testimony was of paramount importance in establishing what motivated him to terminate [the plaintiff], was never asked whether [the slanderous] statement was a factor." . . . Unlike [other cases] where testimony revealed that the slander figured prominently in the minds of those who ultimately took adverse action against the plaintiffs, no evidence in this case shows that [the decision-maker] specifically considered the slanderous statement in terminating [the plaintiff].

---

[4] At one point, it appears that Plaintiff uses the name "Lee" Daniels as opposed to "Gordie" Daniels, which would likely make the mass email incident harder to connect to him, yet Plaintiff does not point to evidence showing that using a different name increased his employability. (Doc. No. 49-27, p. 165-75; Doc. No. 49-28, p. 140-46).

[5] This Court notes that the Simon court was applying California law, but its special damages analysis as used in this order is consistent with Florida law.

Id. at 1318 (internal citations omitted).

Likewise, in the instant case, Plaintiff has not offered any evidence that any of the potential employers knew about HSN's statement and that they decided not to offer him a job because of HSN's statement. Thus, Plaintiff has not proffered any evidence to show that HSN's statement was the reason he did not get the jobs that he sought. See Continental Development Corp. of Fla. v. Duval Title & Abstract Co., 356 So. 2d 925, 928 (Fla. 2d DCA 1978)(finding that the plaintiff did not prove that it suffered special damages in the form of a lost condominium project, because the plaintiff did not proffer evidence to support its conclusion that the slander was the reason for the loss); Bothmann v. Harrington, 458 So. 2d 1163, 1170 (Fla 3d DCA 1984) (noting that the injurious statement must be a substantial factor in causing the special damages). Accordingly, the Court finds that Plaintiff has not shown that he has suffered special damages in the form of lost employment opportunities as a result of HSN's statement.

Second, Plaintiff contends that he can prove special damages in the form of the cost of repairing his reputation online. Plaintiff's expert opines that "[b]ased on the level of dissemination, reach, and engagement surrounding the defamatory statement in news outlets, search results, and on social media platforms, the cost of a digital campaign to correct the defamatory statement would be at least $3,748,015." (Doc. No. 39-4, p. 5). However, as previously noted, the chief characteristic of special damages is a *realized* or *liquidated* loss. Plaintiff does not claim that he *has actually spent* over $3 million to repair his reputation, and he has not provided the Court with any case law supporting his contention that his expert's report is evidence that he has sustained a *realized* or *liquidated* loss. See Falic v. Legg Mason Wood Walker, Inc., 347 F. Supp.2d 1260, 1268 (S.D. Fla. 2004)(stating that "[s]pecial damages are actual, out of pocket losses"); Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742

So. 2d 381, 388 (Fla. 4th DCA)(rejecting the plaintiffs' contention that they sufficiently alleged special damages by alleging that their stock had declined in the value, because such was not a realized loss given that they had not sold the stock); Thermolife International LLC v. Vital Pharmaceuticals Inc., 2020 WL 409594, at *2 (S.D. Fla. Jan. 24, 2020)(finding that the counter-claimant had sufficiently alleged special damages by alleging that it was seeking damages in the form of "expenses incurred to counteract the disparaging effect" of the false statements); Jameson Land Co., LLC v. Mosaic Fertilizer, LLC, 2016 WL 7206122, at *3 (M.D. Fla. Feb. 5, 2016)(finding that the plaintiff had sufficiently alleged special damages by alleging that it had incurred expenses to counteract the false publication).

This Court notes that in Bothmann, the court addressed the issue of special damages in relation to a claim for slander of title due to the allegedly wrongful recording of a lis pendens on the plaintiff's property. See Bothmann, 458 So. 2d at 1170. The Bothmann court noted that for such a claim, the special damages that are recoverable include "the expenses incurred to counteract the publication." Id. (citing *Restatement (Second) of Torts* § 633 (1977)). However, in this case, Plaintiff has not provided any case law showing that special damages for defamation include the amount it would cost (rather than the amount actually spent) to counteract an allegedly false publication. Therefore, the Court finds that Plaintiff has not shown that he has suffered special damages in the form of the anticipated cost of repairing his reputation online.

Based on the above, the Court finds that Plaintiff has failed to point to any evidence of special damages. As a result, the Court grants HSN summary judgment on Plaintiff's defamation *per quod* claim.

**IV. Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendants' Motion for Summary Judgment (Doc. No. 40) is **GRANTED IN PART AND DENIED IN PART:** The motion is granted as to Plaintiff's claim for defamation, both *per se* and *per quod*; the motion is denied as to Plaintiff's FLSA claim.

(2) Defendants' motion for leave to file a reply brief (Doc. No. 50) is **DENIED**.

(3) Defendant's Motion to Strike or Exclude Expert Report (Doc. No. 39) is **DENIED AS MOOT**, as it relates solely to Plaintiff's defamation claim.

(4) The parties' joint pretrial statement must be filed by ***March 6, 2020***.

(5) All pretrial motions, including all motions in limine, must be filed by ***February 14, 2020***. Each party may file *one* motion in limine containing all of their arguments in a single document not to exceed 25 pages.[6] Responses thereto must be filed by ***February 28, 2020***.

DONE AND ORDERED at Tampa, Florida, this 3rd day of February, 2020.

Susan C. Bucklew
SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record

---

[6] Both Plaintiff and Defendants are prohibited from including footnotes in their motions and responses, as they have used them excessively in the instant motion and response in a way to circumvent the page-limit rule.